# EXHIBIT A

**OneMain.**
Lending Made Personal

## LOAN AGREEMENT AND DISCLOSURE STATEMENT

| DATE 05/23/18 | ACCOUNT NUMBER | TYPE OF LOAN (Alpha) E 02 | DATE FINANCE CHARGE BEGINS TO ACCRUE 05/24/18 |
|---|---|---|---|
| LENDER/SECURED PARTY NAME AND ADDRESS ("Lender") | | BORROWER(S) NAME AND ADDRESS ("I","We") | |
| ONEMAIN FINANCIAL GROUP, LLC<br>1106 HOOKSETT RD UNIT 3<br>HOOKSETT, NH 03106-1000     603-627-7601 | | ANTHONY MERRILL<br>20 FLOYD RD<br>DERRY, NH 03038 | |

I have carefully read this entire Loan Agreement And Disclosure Statement and all related documents which include the Optional Products Disclosure Summary, Truth In Lending Insurance Disclosure and, if applicable, Personal Property Appraisal Form and GAP Waiver Addendum, all of which collectively constitute the "Agreement." This Loan Agreement and Disclosure Statement is divided into four sections: A. Truth In Lending Disclosures; B. Loan Terms And Conditions; C. Arbitration Agreement And Waiver Of Jury Trial and D. Entire Agreement/Notices/Signature. If I had any questions, I asked them before I signed these documents. By signing, I indicate my agreement to the statements, promises, terms, and conditions contained in the Agreement.

### A. TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 35.96% | $ 15270.69 | $ 13000.00 | $ 28270.69 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $ 571.96 | 07/01/18 |
| 59 | $ 469.47 | monthly beginning 08/01/18 |

LATE CHARGE: [X] If any payment is not paid in full within 10 days after its due date, I will be charged 5.00 % of the entire amount of the payment, but not more than $ 25.00 or less than $N/A.

[ ] If any payment is not paid in full within N/A days after its due date, I will be charged $N/A if the entire scheduled payment exceeds $N/A or $N/A if the entire scheduled payment is $N/A or less.

PREPAYMENT: If I pay off early:
[ ] I may  [X] I will not have to pay a penalty for prepaying all or part of a loan's principal balance.
[ ] I may  [X] I will not get a refund or credit of part of the finance charge for a prepayment in full. I will not receive a refund or credit for a partial prepayment.

SECURITY: I am giving Lender a security interest in: [X] Unsecured  [ ] Motor Vehicles  [ ] Other Collateral

| | Year | Make | Model | Vehicle Identification No. |
|---|---|---|---|---|
| | | | | |

See the remainder of this Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties, if any.

### ITEMIZATION OF AMOUNT FINANCED

Amounts paid to others on my behalf
1. $NONE    Paid To
2. $NONE    Paid To
3. $NONE    Paid To
4. $NONE    Paid To
5. $NONE    Paid To
6. $NONE    Paid To
7. $NONE    Paid To
8. $NONE    Paid To
9. $NONE    Paid To
10. $NONE   Paid To
11. $       Paid To
12. $       Paid To
13. $       Paid To
14. $       Paid To
15. $       Paid To
16. $       Paid To
17. $       Paid To
18. $       Paid To
19. $       Paid To
20. $       Paid To
21. $NONE   Amount Paid on Prior Account with Lender

Amounts Paid to me
22. $ 13000.00   Paid To ANTHONY MERRILL
23. $            Paid To
24. $            Paid To
25. $            Paid To
26. $            Paid To
27. $            Paid To
$ 13000.00   Amount Financed (Sum of lines 1 - 27)
$NONE        Prepaid Finance Charges (itemized below)

### PREPAID FINANCE CHARGES

1. $NONE    Paid To
2. $NONE    Paid To
3. $NONE    Paid To
4. $NONE    Paid To
5. $NONE    Paid To
6. $NONE    Paid To
7. $NONE    Paid To
8. $NONE    Paid To

**THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT.**

By signing below, I acknowledge receipt of a copy of this Federal Disclosure Statement.

E-SIGNED 05/23/2018 by
ANTHONY MERRILL
Borrower                                           Co-Borrower

SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION

UXAA81 (09-10-17) C.E. Agreement          Page 1

## B. LOAN TERMS AND CONDITIONS

**DATE OF LOAN.** 05/24/18 (the date the Finance Charge is scheduled to begin to accrue).

**CONTRACT RATE.** 35.96% per year, which is the agreed interest rate.

**PROMISE TO PAY.** For value received, I promise to pay to the order of the Lender all amounts due under this Agreement in accordance with the Payment Schedule set forth in the TRUTH IN LENDING DISCLOSURES, and with all other terms of this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full.

**SECURITY INTEREST.** To secure all amounts due or which become due under this Agreement and my performance of all other terms of this Agreement, I hereby grant Lender a security interest under the Uniform Commercial Code or other applicable law in: (a) the property identified in the "Security" disclosure of the TRUTH IN LENDING DISCLOSURES, including a purchase money security interest if property is being purchased with the proceeds hereof; (b) any substitutions or replacements of that property; and (c) the proceeds and products of that property ((a), (b), and (c) collectively referred to as the "Collateral"). I also hereby grant Lender a security interest in any unearned premiums from any credit insurance I have elected and purchased through Lender in connection with this transaction and any Required Insurance which protects the Collateral. Lender's security interest shall remain in effect, and subject to any modifications, renewals, extensions, and future advances thereof, until I have paid in full all amounts due under this Agreement. Notwithstanding any other provision of this Agreement, Lender is not granted, and will not have, a non-purchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. I authorize Lender to sign and file financing statements covering the Collateral without my signature. I authorize Lender to file a copy of this Agreement as a financing statement when appropriate.

**JOINT BORROWERS.** If more than one Borrower is named above, all Borrowers agree that we are jointly and severally liable and that Lender may enforce this Agreement against all or any of us, but not in a combined amount exceeding the amount due.

Each of us under this Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Collateral securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Except as otherwise required by law, Lender does not have to notify Borrower before instituting suit against another Borrower if the note is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

**CO-MAKERS (also referred to as CO-SIGNER(S)).** If I am signing this Agreement as a Co-Maker, I understand that I am equally responsible with the Borrower(s). I agree that Lender may pursue me or any Co-Maker if this Agreement is in default. Unless required by law, Lender will not notify me if: (a) this loan is in default; (b) Lender agrees to accept different payment terms; (c) Lender releases any security interest; or (d) Lender releases any Borrower(s) or Co-Maker(s).

**AUTHORIZATION TO USE CREDIT REPORT.** By signing this Agreement, I authorize Lender to obtain, review and use information contained in my credit report in order to determine whether I may qualify for other products and services marketed by Lender. This authorization terminates when my outstanding balance due under this Agreement is paid in full. I may cancel such authorization at any time by writing the following: OneMain, P.O. Box 70911, Charlotte, NC 28272-0911. In order to process my request, Lender must be provided my full name, address, and account number.

**VOLUNTARY CREDIT INSURANCE/GROUP DEBTOR INSURANCE.** As used in this Agreement, the term "credit insurance" includes credit life insurance, credit disability insurance, credit involuntary unemployment insurance, and the term "credit life insurance" includes group debtor life insurance, where offered. Lender's affiliate may provide the credit insurance that I voluntarily select. Lender and/or its affiliates expect to profit from my purchase of voluntary credit insurance and I consent to this.

**REQUIRED INSURANCE.** I am required to maintain insurance in types, amounts, terms and deductible levels acceptable to Lender ("Required Insurance"). The Required Insurance must keep the Collateral insured against hazards for which Lender requires insurance. Such coverage includes, but is not limited to, loss by theft, vandalism, collision, fire, and any other risks of loss that would either impair Lender's interest in the Collateral or adversely affect the value of the Collateral. I have the option of providing the Required Insurance through an existing policy of insurance owned or controlled by me, or through a policy obtained and paid for by me. I may purchase this Required Insurance through any insurer, insurance agent, or broker of my choice that is acceptable to Lender. Lender may not decline to accept any insurance provided by me unless it is for reasonable cause. Examples of reasonable cause include, but are not limited to, the financial condition of the insurer and the amount or type of coverage chosen. My choice of insurer will not otherwise affect Lender's credit decision or my credit terms. The types, amounts, and deductible levels that Lender requires under this Agreement may change during the term of the Agreement. Required Insurance must: (a) include a lender's loss payable provision; (b) name Lender, its successors and/or assigns, as loss payee; (c) provide that such insurance will not be canceled or modified without at least fifteen (15) days prior written notice to the loss payee; and (d) not include any disclaimer of the insurer's liability for failure to give such notice. I shall promptly give to Lender satisfactory proof (in Lender's reasonable estimation) of all Required Insurance and all receipts of paid premiums and renewal notices.

I agree to keep my Required Insurance in force until all amounts that I owe Lender under this Agreement or the security instrument are paid in full, my account is terminated, and Lender releases or discharges its security interest. In case of damage to or loss of the Collateral, I agree to give prompt notice to Lender and the Insurance carrier. If I fail to promptly notify or make proof of loss to the insurance carrier, Lender may (but is not required to) do so on my behalf.

If I do not keep Required Insurance under this Agreement in force at all times, Lender may, but is not required to, in Lender's sole discretion, and at my expense, obtain insurance coverage to protect Lender's interest in the Collateral. I understand and agree that:

- A. Lender is under no obligation to obtain any particular type or amount of coverage.
- B. Lender-obtained insurance may, but need not, protect my interests.
- C. Lender-obtained insurance may, but need not, pay any claim I make.
- D. the cost of Lender-obtained insurance may be much more than the cost of insurance I could have obtained on my own.
- E. any amounts disbursed by Lender under this Section to obtain insurance shall become additional debt of mine under this Agreement, secured by this Agreement or the Security Instrument.
- F. I am hereby authorizing Lender to release to, or obtain from, third parties any information necessary to monitor the status of Required Insurance.
- G. Lender-obtained insurance may be purchased from an affiliate of Lender.
- H. Lender, or its affiliate, may earn a profit by obtaining this insurance, to the extent permitted by applicable law.
- I. Lender may, at any time and at its sole option, cancel Lender-obtained insurance.
- J. Lender has a security interest in any unearned premiums from such insurance;
    1. I am hereby absolutely assigning to Lender any rights I may have to unearned Lender-obtained insurance premiums; and
    2. I am hereby authorizing and appointing Lender to be my attorney-in-fact for the purpose of cancelling the Lender-obtained insurance and applying the unearned premiums to reduce the account balance upon cancellation of said insurance.

**ASSIGNMENT OF UNEARNED INSURANCE PREMIUMS AND POLICY PROCEEDS.** Where allowed by law, I hereby absolutely assign to Lender my rights to any Required Insurance proceeds, and any unearned Required Insurance or credit insurance premium refunds, and any other rights under policies covering the Collateral up to, but not in excess of the Total Balance due under this Agreement or security instrument. I agree that Lender may use any insurance proceeds, and any unearned Required Insurance or credit insurance premium refunds, to reduce the amounts that I owe under this Agreement or the security instrument, whether or not they are due. I authorize Lender to adjust my losses and sign my name to any check, draft, or other papers necessary to obtain such insurance payments. If insurance proceeds or unearned premium refunds paid to Lender do not satisfy all amounts that I owe Lender under this Agreement or the security instrument, I remain responsible for payment of the balance of any amounts due under this Agreement and the security instrument.

**CORRECTION; RELEASE.** During the term of this Agreement, I agree to cooperate with Lender to: (a) correct any clerical errors that were made in connection with loan documents; (b) obtain the correct amounts due to others; and (c) release, or cause to be released, all liens upon payment in full.

SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION


NHAB21 (10-01-16) C.E. Agreement

Page 2

Initials    A. M.

**SEVERABILITY.** Other than the class action waiver described in subsection G of section C. ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL, the fact that any provision of this Agreement may prove invalid or unenforceable under any law, rule, or regulation of any federal, state, or local court or governmental entity shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**NO ASSUMPTION.** This Agreement shall not be eligible for assumption by any third party without the express written consent of Lender.

**DEFAULT.** Except as prohibited by law or as limited by other provisions of this Agreement, I will be in default of this Agreement if any one or more of the following occurs:

A. I fail to make any payment, including, but not limited to the Total Amount Due, under this Agreement when due.
B. I fail to do anything else I have agreed to do in this Agreement.
C. Any statement or representation I made in my credit application is untrue or incorrect.
D. I fail to provide Lender with proof of residence or Required Insurance within three (3) business days after Lender's written request for this information.
E. Any judgment, levy, attachment, writ of garnishment, or other similar order is entered against me or the Collateral.
F. Any police or governmental agency seizes or impounds the Collateral or starts forfeiture proceedings against the Collateral.
G. If I relocate to another state without giving written notice at least 30 days before relocating.
H. I sell, lease or otherwise encumber or dispose of the Collateral without Lender's written permission.

**GENERAL REMEDIES.** If I am in default of this Agreement, Lender has, subject to any requirements of notice or right to cure or similar provisions, all of the remedies permitted by law and this Agreement, including:

A. Lender may require me to pay Lender immediately, subject to any rebates required by law, the remaining unpaid balance of the Amount Financed, finance charges, and all other agreed charges. These amounts will accrue interest from the date I am required to pay Lender at the Contract Rate or lesser rate as required by applicable law, until paid in full.
B. Lender may pay taxes, assessments, or other liens, or make repairs to the Collateral if I have not done so, but Lender is not required to do so. Upon payment by Lender, these amounts will be due immediately.
C. Lender may require me to make the Collateral available to Lender at a place Lender designates that is reasonably convenient to Lender and me.
D. Lender may immediately immobilize, disable, or take possession of the Collateral by legal process or self help, but in doing so Lender may not breach the peace or unlawfully enter onto my premises. Lender may then sell the Collateral and apply what Lender receives, as provided by law, to Lender's actual and reasonable expenses before all other amounts due hereunder.
E. Except when prohibited by law, I am responsible for any deficiency if the proceeds from the sale of the Collateral do not cover what I owe Lender, and Lender may sue me for those additional amounts.
F. Lender has the right, but not the obligation, to cancel or request termination of any voluntary credit insurance in the event of default and I hereby appoint Lender as my attorney-in-fact to cancel any such insurance in the event of default, subject to any applicable restrictions under state law. Return of any unearned premium as a result of such request for termination or cancellation will be credited to my loan account.
G. Lender may accept late payments or partial payments even though marked "Payment in Full" (or similar language) without losing any of its rights under this Agreement, to the extent permitted by law.

By choosing any one or more of these remedies, Lender does not waive its right later to elect another remedy. By deciding not to use any remedy, Lender does not give up its right to consider it an event of default if it happens again. Lender's rights hereunder are cumulative, not exclusive.

I agree that, if any notice is required to be given to me of an intended sale or transfer of the Collateral, notice is reasonable if mailed to my last known address, as reflected in Lender's records, at least ten (10) days before the date of the intended sale or transfer, or such other period of time as is required by law.

I agree that, subject to my right to recover such property, Lender may take possession of personal property left in or on the Collateral taken into possession as provided above.

**DELAY IN ENFORCEMENT.** Lender may delay enforcing any of its rights under this Agreement without losing them.

**NOTICES.** If required by law, Lender will provide me with notices under this Agreement which, if mailed, shall be sent to my last known address as reflected in Lender's records, including, but not limited to, notices of default, right to cure, and purchase of Required Insurance.

**SAVINGS CLAUSE.** All agreements between me and Lender are expressly limited so that any interest, finance charges, loan charges, or other fees collected or to be collected from me or any person executing this Agreement shall not exceed, in the aggregate, the highest amount allowed by applicable law. If a law that applies to this Agreement and my loan is finally interpreted so that the interest, finance charges, loan charges, or other fees collected, or to be collected, in connection with this loan exceed the permitted limits, then: (a) any such interest, finance charges, loan charges, or other fees shall be reduced to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded. Lender may choose to make this refund by reducing the remaining unpaid balance that I owe under this Agreement or making a direct payment to me.

> The following notice applies if the proceeds of this loan will be applied in whole or substantial part to a purchase of goods or services from a seller who either refers consumers to the Lender or who is affiliated with the Lender by common control, contract, or business arrangement. **NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION



**INTEREST BEARING LOAN.** I agree to pay to the order of Lender, Principal, plus interest ("finance charges") on the unpaid daily Principal balance computed at the Contract Rate, in the Payment amounts, on or before the dates set forth in the Payment Schedule in the TRUTH IN LENDING DISCLOSURES on page 1 hereof, plus all other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. All payments will be applied in the following order to: (a) late charges and other charges provided for in this Agreement or otherwise allowed by law, (b) interest accrued to the date upon which the payment is received and applied by Lender, and (c) unpaid Principal. Because interest on my loan is earned daily, early payments will decrease the amount I owe, and late payments will increase that amount. The Payment Schedule assumes that I will make each payment on the day it is due; therefore, my final payment will be adjusted as appropriate to reflect any variation in the actual dates my payments are received by Lender. I agree to pay finance charges on the unpaid Principal balance at the Contract Rate, both before and after my final scheduled payment due date, any default, or any judgment that may be obtained, until payment in full.

**PRINCIPAL.** Principal is the total of the Amount Financed, plus any Prepaid Finance Charges that I have financed.

**PREPAYMENT.** I may prepay all or part of my loan at any time. The Prepaid Finance Charges are deemed by the parties to be fully earned on the Date of Loan and are not refundable, to the extent permitted by applicable law.

**LATE CHARGE.** I agree to pay any late charge described in the TRUTH IN LENDING DISCLOSURES herein.

**DISHONORED CHECK CHARGE.** If my check or other instrument given to Lender is returned unpaid for any reason, I agree to pay a dishonored check charge of $25.00, plus the amount Lender is charged by its financial institution.

**DEFAULT COSTS.** In the event of default, I agree to pay costs to realize on any security interest, to the extent permitted by applicable law.

**GOVERNING LAW.** Federal law and the laws of the State of New Hampshire shall govern this Agreement. Loans of $10,000 or less are governed by the New Hampshire Small Loan Act, NHRS 399-A:1 et seq. and other applicable New Hampshire laws, except for loans for the purchase of motor vehicles. Loans for the purchase of motor vehicles are governed by federal law and the New Hampshire Retail Installment Sales of Motor Vehicle provisions NHRS 361-A.1 et seq. A consumer or a consumer's attorney may file a complaint regarding small loans with the New Hampshire Bank Commissioner; Banking Department, 53 Regional Drive, Suite 200, Concord NH 03301



SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION

NHAD21 (01-15-17) C.E. Agreement          Page 4          Initials A. M.

## C. ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL

**DESCRIPTION OF ARBITRATION.** Arbitration is a method of resolving claims and disputes between parties without having to file a lawsuit in court. It is a process in which both sides present their case to a neutral third person—the arbitrator—instead of a judge or jury, to resolve the dispute. **UNDER THIS AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO A JURY TRIAL OR JUDGE TRIAL OF ALL CLAIMS AND DISPUTES COVERED BY THIS ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL ("this Arbitration Agreement") TO THE FULLEST EXTENT PERMITTED BY LAW.**

**CLAIMS AND DISPUTES COVERED.** Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve all claims and disputes between us ("Covered Claims") by BINDING ARBITRATION. This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:

This Agreement with Lender; any previous retail credit agreement ("Retail Contract") assigned to Lender and any previous loan from or assigned to Lender, whether any of the foregoing may be open-end or closed-end; all documents, promotions, advertising, actions, or omissions relating to this or any previous loan or Retail Contract made by or assigned to Lender; any insurance product, service contract, membership plan or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender; any product or service offered to Lender's customers with any assistance or involvement by Lender; whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement (except as expressly set forth in subsection G. below) and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of this Arbitration Agreement and the Agreement; any negotiations between Lender and me; the closing, servicing, collecting, or enforcement of any transaction covered by this Arbitration Agreement; any allegation of fraud or misrepresentation; any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; any claim based on state or federal property laws; any claim based on the improper disclosure of any information protected under state or federal consumer privacy laws; any claim or dispute based on any alleged tort (wrong), including intentional torts; any claim for damages or attorneys' fees; and any claim for injunctive, declaratory, or equitable relief.

**COVERED CLAIMS AGAINST THIRD PARTIES.** This Arbitration Agreement also covers any claim or dispute between me and any of Lender's employees, officers, agents, or directors; any of its affiliate corporations; any entities which provided insurance in connection with this or any previous transactions between me and Lender; any third parties that assigned Retail Contracts or other agreements to Lender; any third party that provides me any product or service which I purchased with the assistance or involvement of Lender; and any of the employees, officers, agents, or directors of such affiliates or third parties. Affiliate corporations are Lender's parent corporations, subsidiary corporations, and sister corporations. Some of Lender's affiliates are OneMain Consumer Loan, Inc., iLoan, OneMain Home Equity, Inc., OneMain Financial Services, Inc., Merit Life Insurance Co., and Yosemite Insurance Company. In addition, if Lender becomes a party in any lawsuit that I have with any third party, whether through intervention by Lender or by motion made by me or any third party, all claims in that lawsuit between me and the third party will be subject to binding arbitration under this Arbitration Agreement, provided that the third party is required to agree to resolve such claims by arbitration.

**MATTERS NOT COVERED BY ARBITRATION.** I agree that Lender does not have to initiate arbitration before exercising lawful self-help remedies or judicial remedies of garnishment, repossession, replevin, or foreclosure, but instead may proceed in court for those judicial remedies. I may assert in court any defenses I may have to Lender's claims in such a lawsuit, but any claim or counterclaim for rescission or damages I may have arising out of, relating to, or in connection with Lender's exercise of those remedies must be arbitrated. Instead of pursuing arbitration, either Lender or I also have the option to bring a lawsuit in court to seek to recover the monetary jurisdictional limit of a small claims or equivalent court in my state (including costs and attorneys' fees), provided that no relief other than such recovery is requested in such lawsuit (an "Excluded Damages Lawsuit"). If an Excluded Damages Lawsuit is filed, the other party cannot require that the claims in that lawsuit be arbitrated. An Excluded Damages Lawsuit can be brought to recover money for myself or Lender only, not for any class or group of persons having similar claims. If such an Excluded Damages Lawsuit is filed by me or Lender, and any party to that lawsuit files an amendment, counterclaim, cross-claim, or third-party claim seeking to recover more than my state's small claims or equivalent court's monetary jurisdictional limit, then that claim, counterclaim, cross-claim, or third-party claim must be arbitrated in accordance with the procedures set forth in this Arbitration Agreement. Neither I nor Lender shall be deemed to have waived any arbitration rights by the fact of having exercised any self-help or judicial remedies of garnishment, repossession, replevin or foreclosure or by having filed in court an Excluded Damages Lawsuit.

**ARBITRATION RULES AND PROCEDURES.**

**A. ARBITRATION FORUM AND RULES.** The arbitration will be conducted under the rules and procedures of the American Arbitration Association ("AAA") in effect at the time arbitration is started and under the rules set forth in this Arbitration Agreement. At my request, Lender will provide me a copy of the AAA Consumer Rules ("Rules"). I may also obtain a copy of those Rules by calling AAA at 1-800-778-7879 or by reviewing AAA's web-site at http://www.adr.org/consumer. In the event that AAA is either unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim, or I object to the AAA for good cause, then Lender and I agree to submit all disputes to Judicial Arbitration and Mediation Services, Inc. ("JAMS") for proceedings conducted pursuant to JAMS' Comprehensive Arbitration Rules. If there is a conflict between the rules of the AAA (or JAMS) and this Arbitration Agreement, this Arbitration Agreement will govern. If both of the designated arbitration forums cannot or will not administer the arbitration and the Lender and I cannot reach an agreement on a substitute, it remains Lender's and my intent that Covered Claims be arbitrated and that a court appoint an arbitrator pursuant to 9 U.S.C. § 5. Any court-appointed arbitrator must be an actively-licensed attorney or retired judge who has been in good standing with the bar for at least ten years.

**B. SELECTION OF ARBITRATOR.** AAA (or JAMS) maintains lists of approved arbitrators. AAA (or JAMS) will provide Lender and me each a list of seven possible arbitrators. Lender and I will each have an opportunity to strike three persons from that list. I will make the first strike, and Lender and I will alternate in making strikes after that. After the last strike, the remaining person shall then serve as arbitrator.

**C. STARTING ARBITRATION.** If Lender or I elect to arbitrate a Covered Claim, the electing party must notify the other party in writing. This notice can be given after the beginning of a lawsuit and can be given by way of a motion or other papers filed in the lawsuit. Otherwise, my notice must be sent to Lender at the address shown for Lender in this Agreement, unless I have received notice of a new address for Lender. Except as described below, nothing in this Arbitration Agreement shall limit the arbitrator's ability to enforce any of my rights or impose any remedies available to me under any applicable consumer protection laws or regulations. To start an arbitration, Lender and I agree to follow the rules of the applicable arbitration forum.

**D. COSTS OF ARBITRATION.** The AAA (or JAMS) charges certain fees in connection with arbitration proceedings. Except in Texas, I may have to bear some of these fees; however, if I am not able to pay such fees or think they are too high, Lender will consider any reasonable request to bear the cost. Lender will also bear any costs Lender is required to bear by law or by the terms of any other agreement with me. To the extent permitted by law, each party will also pay for its own costs, including fees for attorneys, experts, and witnesses, unless otherwise provided by the terms of any other agreement between the parties.

**E. CONDUCT OF PROCEEDINGS.** The arbitrator shall be bound by the Federal Rules of Evidence; however, the federal or any state rules of procedure or discovery shall not bind the arbitrator. The arbitrator's findings, reasoning, decision and award shall be set forth in writing and shall be based upon and be consistent with the law of the jurisdiction that applies to the loan or other agreement between Lender and me. The arbitrator must abide by all applicable laws protecting the attorney-client privilege, the attorney work product doctrine, or any other applicable privileges.

**F. ENFORCEMENT AND APPEAL OF DECISION.** The decision and judgment of the arbitrator shall be final, binding and enforceable in any court having jurisdiction over the parties and the dispute; however, for Covered Claims resulting in an award of $100,000 or more (including costs and attorneys' fees), any party may appeal the award, at its own cost, except as provided by law, to a three-arbitrator panel appointed by the AAA (or JAMS). That panel will reconsider from the start any aspect of the initial award that either party asserts was incorrectly decided. The decision of the panel shall be by majority vote and shall be final and binding, except as provided below. The arbitrator's (or panel's) findings, decision and award shall be subject to judicial review on the grounds set forth in 9 U.S.C. § 10, as well as on the grounds that the findings, decision and award are manifestly inconsistent with the terms of this Arbitration Agreement and any applicable laws or rules.

**G. LIMITATION OF PROCEEDINGS.** Lender and I further agree that the arbitrator will be restricted to resolving only the claims, disputes or controversies between Lender and me and the other parties covered by this particular Agreement (and not by similar agreements). Arbitration is not available and shall not be conducted on a class-wide basis or consolidated with other claims or demands of other persons. I agree not to participate in a representative capacity or as a member of any class of claimants pertaining to any Covered Claim. To the extent that this class action waiver provision is found to be unenforceable, then the entirety of this Arbitration Agreement shall be null and void. The determination of the validity of the enforceability of this class action waiver is to be made by the court and not the arbitrator.

**H. LIMITATION OF ARBITRATOR'S AUTHORITY.** The arbitrator may award punitive damages only under circumstances where a court of competent jurisdiction could award such damages. In awarding any punitive damages, the arbitrator must abide by all applicable state and federal laws regarding the amount of such damages, and the arbitrator must state the precise amount of the punitive damages award. The arbitrator must also conduct a post-award review of any punitive damages, allowing the parties the same procedural rights and using the same standards and guidelines that would apply in a judicial proceeding in the state where the arbitration is conducted. The arbitrator may award injunctive relief that would benefit either Lender or me in connection with resolving a Covered Claim between Lender and me, but the arbitrator may not award injunctive relief for the benefit of other persons or groups of persons who are not named parties to the arbitration proceeding.

**I. LOCATION OF THE ARBITRATION.** The arbitration will take place in the county where I live unless Lender and I agree to another location. If Lender and I agree, all or a portion of the arbitration proceedings can be conducted by telephone conference.

**J. FORUM SELECTION CLAUSE.** If either Lender or I need to file a lawsuit to enforce this Arbitration Agreement or to pursue claims that either may or may not be arbitratable under this Arbitration Agreement, the exclusive venue for that suit will be a state court located in the county in which Lender's address set forth above is located or where I sign this Arbitration Agreement, or in the federal court covering that county, unless the governing law requires suit to be filed in another location.

**K. ENFORCEMENT IN COURT.** Nothing in this Arbitration Agreement shall prevent either Lender or me from enforcing all rights under this Arbitration Agreement if a Covered Claim is filed in court.

**OTHER IMPORTANT AGREEMENTS.** Lender and I agree:

A. This Arbitration Agreement does not affect any applicable statute of limitations or repose or any claims of privilege recognized at law in the jurisdiction that applies to the loan, the Agreement or any other agreement between Lender and me, which an arbitrator is bound to apply.
B. The loan and insurance transactions between Lender and me and other applicable parties are transactions involving interstate commerce, using funds and other resources from outside the state.
C. The Federal Arbitration Act applies to and governs this Arbitration Agreement. State arbitration laws and procedures shall not apply to this Arbitration Agreement.
D. This Arbitration Agreement applies to and runs to the benefit of Lender's and my assigns, successors, executors, heirs, and/or representatives.
E. If any term of this Arbitration Agreement, other than the class action waiver described in subsection G. above, is unenforceable, the remaining terms are severable and enforceable to the fullest extent permitted by law.
F. This Arbitration Agreement supersedes any prior arbitration agreement that may exist between Lender and me and can only be modified in writing signed by the parties.
G. This Arbitration Agreement applies even if my loan has been cancelled, changed, modified, refinanced, paid in full, charged off, or discharged or modified in bankruptcy.

I AGREE TO READ THIS ARBITRATION AGREEMENT CAREFULLY, BECAUSE IT LIMITS CERTAIN OF MY RIGHTS, TO THE EXTENT PERMITTED BY LAW, INCLUDING MY RIGHTS TO BRING A COURT ACTION, TO HAVE A TRIAL BY JURY, AND TO PARTICIPATE IN A CLASS ACTION OR CLASS ARBITRATION. BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ AND RECEIVED A COPY OF THIS ARBITRATION AGREEMENT AND AGREE TO BE BOUND BY ALL OF ITS TERMS.

UXARB1 (07-15-12)

## D. ENTIRE AGREEMENT/NOTICES/SIGNATURE

**ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties with regard to the subject matter hereof, and no party hereto has relied upon any representations except such as are specifically set forth herein. This Agreement cannot be modified in any respect except by an amendment in writing signed by the parties. All notices under this Agreement shall be in writing and directed to the parties at the addresses shown at the beginning of this Agreement or to such other address as a party may specify by notice given in accordance with this paragraph.

BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.

UXARB2 (07-15-12)

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.

NOTICE TO THE BUYER: 1. READ THIS CONTRACT BEFORE SIGNING. 2. YOU ARE ENTITLED TO AN EXACT COPY OF THIS CONTRACT BEFORE YOU SIGN.

I agree that, on or before the date on page 1 hereof ("the Date of Agreement"), I have received and read a fully completed, legible copy of all of the documents comprising this Agreement, and the Privacy Notice and agree to be bound thereby.

**Consent to be Contacted by Telephone.** I expressly consent and agree that Lender may contact me at any telephone number that I provide Lender now or in the future, including a number for a cellular phone or other wireless device and a number that I later convert to a cellular phone or other wireless device. I understand that this consent means that I agree to receive voice calls using automatic telephone dialing systems, prerecorded or artificial voice messages and text messages by or on behalf of Lender for transactional purposes, such as the collection and servicing of my loan account with Lender.

x __N/A_____  
    Witness

x __N/A_____  
    Witness

x _____ L.S.  
    Co-Maker  
    Print Name: _____

x __E-SIGNed 05/23/2018 by_____ L.S.  
    ANTHONY MERRILL  
    Borrower    ANTHONY MERRILL

x _____ L.S.  
    Co-Borrower

x _____ L.S.  
    Co-Maker  
    Print Name: _____

NHAF31 (10-08-17) C.E. Agreement      Page 6